Appeal No. 23-13156-F

# In the United States Court of Appeals for the Eleventh Circuit

_____

**ATHOS OVERSEAS LIMITED CORP.,**

**Appellant,**

*v.*

**YOUTUBE, INC., YOUTUBE, LLC, and**

**GOOGLE, LLC,**

**Appellees.**

_____

**On Appeal from the United States District Court
for the Southern District of Florida
Case No. 21-cv-21698-DPG**

_____

**APPELLANT'S REPLY BRIEF**

_____

Omar Ortega
Rey Dorta
Rosdaisy Rodriguez
Dorta & Ortega, PA
Attorneys for Appellant
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Phone: 305-461-5454
Email: oortega@dortaandortega.com
Email: rdorta@dortaandortega.com
Email:rrodriguez@dortaandortega.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Anaba, Ariel C. Green (Counsel for Appellees)

Athos Overseas Limited Corp. (Appellant)

Byrd, Dylan (counsel for Appellee)

Cine Estelar, Inc.

Cine Nostalgia, Inc.

Coulter, David T. (counsel for Appellee)

Dorta & Ortega, P.A. (counsel for Appellant)

Dorta, Reinaldo (counsel for Appellant)

Gente de Cine, S.A.

Google LLC (Appellee)

Gorman, Nathalie M. (counsel for Appellees)

Hartman, Catherine R. (counsel for Appellees)

Li, Luis (counsel for Appellees)

Ortega, Omar (counsel for Appellant)

Reed, Jenea M. (counsel for Appellees)

Rodriguez, Rosdaisy (counsel for Appellant)

Shapiro, Jay B. (counsel for Appellees)

Stearn Weaver Miller Weisller Alhadeff & Sitterson, P.A. (counsel for Appellees)

Templeton, Trevor (counsel for Appellees)

Top Entertainment Products, Inc.

Top Products Investments, Inc.

Tuttle, Eric (counsel for Appellees)

Vasallo, Carlos

Wakefied, Thomas R. (counsel for Appellees)

Willen, Brian M. (counsel for Appellees)

Wilson Sonsini Goodrich & Rosati (counsel for Appellees)

Yen, Lucy (counsel for Appellees)

Youtube, LLC (Appellee)

Appellant certifies that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT …………………………………….. C-1

TABLE OF CITATIONS…. ……………………………………….. i

ARGUMENT …………………………………………………….. 1

    A. The DMCA requires YouTube to expeditiously remove all content that infringes on the material Athos identified in its DMCA takedown notice and that it locates through its automatic deployment of fingerprinting technology.…………………..…... 3

    B. The evidence shows YouTube had knowledge that the clips-in-suit displayed infringing material and it was willfully blind to it.................................................................................................... 16

    C. YouTube financially benefits from material infringing on Athos' copyrights and has the right and ability to control that infringing activity................................................................................................. 19

CONCLUSION …………………………………………………….. 22

CERTIFICATE OF COMPLIANCE …………………………………. 23

CERTIFICATE OF SERVICE ……………………………………….. 24

# TABLE OF CITATIONS

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)…………………..  17

Atlantic Recording Corp. v. Spinrilla, LLC,
    506 F. Supp. 3d 1294 (S.D. Fla. 2020) ………………...…………….  17

Disney Enterprises, Inc. v. Hotfile Corp.,
    No. 11-20427-CIV, 2013 WL 6336283, at *18 (S.D. Fla. Sept. 20,
    2013.......................................................…………………………….  2, 20

Edmondson v. Velvet Lifestyles, LLC, 43 F.4th 1153 (11th Cir. 2022)…  17

Fonovisa, Inc. v. Cherry Auction, Inc.,
    76 F.3d 259 (9th Cir. 1996)…….…………………………………….  19, 20

Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754 (2011)…………  18

Latimer v. Roaring Toyz, Inc., 601 F.3d 1224 (11th Cir. 2010)….………  15

Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology
Enterprises, 533 F.3d 1287 (11th Cir. 2008)………………………….…..  15

UMG Recordings, Inc. v. Shelter Cap. Partners LLC,
    718 F.3d 1006 (9th Cir. 2013) ………………………………………….  11, 19

Viacom Int'l Inc. v. YouTube, Inc.,
    676 F. 3d 19 (2d Cir. 2012) …………………………………………….  8, 11

Viacom Int'l Inc. v. YouTube, Inc.,
    718 F. Supp. 2d 514 (S.D.N.Y. 2010) ………………………………….  11

## Statutes

17 U.S.C. §512(c)(1)………………………………………………….…..  1, 4, 8
                                                                          17, 20

17 U.S.C. §512(c)(3)(A)……………………………………….. 5, 14

17 U.S.C. §512(m)..……………………………………….. 3, 9

**Other Authorities**

S.Rep. No. 105-190 (1998) …………………………………….. 11, 19, 21

United States Copyright Office, Section 512 of Title 17, A Report of the Register of Copyright (May 2020) …………………………………… 10

**ARGUMENT**

YouTube's deliberate refusal to remove all copies of copyrighted material that Athos identifies as infringing in its DMCA takedown requests disqualifies it from safe harbor protection under 17 U.S.C. §512(c). The district court erred in finding YouTube only had to remove the specific URL Athos included in the takedown notice while leaving available other videos identical to the one in the URL. Athos' interpretation of the statute does not require YouTube to do "more than just remove the clips that Athos identified, and instead [] affirmatively search for and remove all *other* similar *unidentified* videos." (YTB p. 22[1]) The contrary is true. Athos is asking YouTube to remove the *material* that infringes on its copyrighted works, as required by the DMCA. 17 U.S.C. §512(c)(1). YouTube fingerprints and scans for the purpose of matching content every video uploaded to its platform. YouTube automatically uses fingerprinting technology to detect videos that match the material identified in the takedown notice, but does not remove those matches. Instead, it required Athos to send repeated takedown notices for the same work and material in order for YouTube to remove it. Accordingly, YouTube's decision to not remove the material containing matching fingerprints of the material in the takedown notice and waiting until repeated notices were received disqualifies it from the safe harbor because it did not remove the material expeditiously. The videos matching the

---

[1] "YTB __" refers to Appellees' Brief.

1

fingerprints of the material in the notice sent by Athos gave YouTube actual knowledge, or red-flag knowledge, of additional infringing activity, but instead of removing it immediately when it removed the material in the URL, it willfully blinded itself to the infringement.

The interpretation of the statute by the district court and YouTube contradicts Congress' intent in enacting the DMCA and leads to an absurd result. That is, forcing Athos and copyright owners to repeatedly and perpetually send takedown requests to YouTube, imposing an obligation to manually search millions of videos when the search engine that displays the content automatically identifies content matching the infringing material the copyright owner identifies. The "DMCA was meant to foster the growth of the Internet while protecting the rights of copyright holders and encouraging Internet entities' efforts to offer valuable on-line services, which on occasion might be infringing under copyright law." See Disney Enterprises, Inc. v. Hotfile Corp., No. 11-20427-CIV, 2013 WL6336286, at *18 (S.D. Fla. Sept. 20, 2013). The safe harbor in the DMCA encouraged service providers to invest in the development of the systems while protecting copyrighted works by imposing takedown obligations. The service providers developed the systems that automatically identify infringing activity identical to the one described in a takedown notice. The service provider, without doing anything more than it has already done, is in the better position to remove all matching content. The district

court's conclusion imbalances the quid-pro-quo created by Congress for gaining copyright immunity in exchange for voluntary compliance with §512. It allows YouTube to deliberately ignore infringing material it has knowledge of and severely hinders a copyright owner's ability to protect its creative works. The district court's decision empowers YouTube to continue disregarding the rights of copyright creators. This decision is a grave error, impedes creative development, and is an improper interpretation of the DMCA.

**A. The DMCA requires YouTube to expeditiously remove all content that infringes on the material Athos identified in its DMCA takedown notice and that it locates through its automatic deployment of fingerprinting technology.**

YouTube misapprehends the statute's protection of privacy at Section 512(m) to not condition applicability of the safe harbor on "a service provider monitoring its service or affirmatively seeking facts indicating infringing activity" (17 U.S.C. §512(m)) with an alleged right to avoid information. YouTube overstates the protection of §512(m) in an effort to convince this Court that despite YouTube's practice of affirmatively deploying its fingerprinting technology on every single video uploaded to its platform, it should be allowed to disregard the information learned through that routine use after a copyright owner has complied with its obligation to notify it that activity in YouTube's platform infringes on copyrighted

material. The DMCA, and Congress' expressed intent when enacting it, does not allow this interpretation.

The statute at Section 512(c)(1) states that a service provider shall not be liable . . . for infringement of copyright . . . , if the service provider—

(A)(i) does not have actual knowledge that the *material or an activity using the material* on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the *material*;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the *material* that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(emphasis added).

Pursuant to Section 512(c)(3), a notification of claimed infringement is effective when it is in writing and includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) *Identification of the copyrighted work claimed to have been infringed*, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the *material* that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access

4

to which is to be disabled, *and information reasonably sufficient to permit the service provider to locate the <u>material</u>.*

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A) (emphasis added). The <u>material</u> is not described in the law or legislative history as a particular URL which may be moved and reposted nearly simultaneously with the link. The <u>material</u> is the copyright-protected work that been hosted and promulgated by the service provider.

There is no dispute that Athos' takedown notices fully complied with the requirements of the statute by identifying the <u>material</u> infringing on its copyrighted work. Further, YouTube fingerprints every video uploaded to its platform. Doc 137-6 tr. 102:25-103:10 (stating that "when a video is uploaded [] a fingerprint is generated[.]"). The purpose of generating fingerprints is to ensure YouTube locates and flags infringing content. <u>See</u> Doc 137-6 tr. 70:17-20, 146:12-147:03. Once a video is uploaded, YouTube's Content ID automatically generates a digital fingerprint of every video. <u>See</u> Doc 137-6 tr. 99:04-13, 102:25-103:07-10, 118:17-120:08 (testifying that when a video is uploaded a fingerprint is generated which is

then compared to the fingerprint generated by Content ID reference file). The
software mechanically and instantaneously compares the fingerprint with other
fingerprints in the platform for purposes of obtaining matches of material that
copyright owners have informed YouTube is copyrighted. See 137-6 tr. 100:17-21;
103:7-10 109:17-23; 110:6-17.

YouTube alleges it only compares the fingerprints of all videos uploaded with
material provided by the copyright owner who executes a contract to use Content
ID, but "a video that's already been uploaded onto YouTube can be used as a
reference file within the system." Doc 137-6 tr. 107:20-22. YouTube wants this
Court to believe it altruistically offered Athos use of Content ID, but Athos spurned
that offer. (YTB p.35) However, YouTube omits that the contract was monopolistic
and abusive (See Doc 137-1 tr. 156:04-18, 262:09-263:19; Doc 137-4 at 136, ¶5), as
it required Athos to give up valuable legal rights when the DMCA requires YouTube
to do what Content ID does without having to execute a contract of adhesion.
Moreover, it is not just what Content ID does, it is YouTube's business model.
Naturally, YouTube prefers copyright owners enter into agreements to monetize
infringement on YouTube because it generates YouTube billions of dollars. Even if
the owner does not monetize the content and blocks it, the material is still monetized
until it is blocked. Therefore, rather than removing all content that matches material
identified in Athos' takedown notice, YouTube simply elects to only remove the clip

at the specific URL instead of all material in its platform that it knows, based on its own fingerprint, is a match to the material at the identified URL. Doc 137-6 tr. 191:02-12 (testifying YouTube interprets "[a] takedown request [as] a request to remove a specific URL.") YouTube's action, or rather inaction, is not protected by the DMCA.

As detailed in Athos' Initial Brief, the statute does not require the owner to provide a URL to confer the requisite knowledge and trigger YouTube's statutory obligation to remove infringing material identified by Athos (AIB[2] pp 22-26). YouTube's decision to punish Athos (and other copyright owners) for refusing to enable infringement of its copyrighted works through YouTube's advertising and monetization systems by relying on outdated caselaw, which permits YouTube to ignore a copyright owner's directive for removal of all content that is similar or identical to that described in a takedown request, considering YouTube's customary business practices to identify that specific material contradicts the DMCA's plain language and intent. The allegation that Athos is demanding YouTube to unilaterally monitor its service and remove content without Athos' participation is disingenuous. (YTB p. 35) Athos is not asking YouTube to preemptively police its copyrighted works or to remove Athos's content without receiving a takedown request. Rather, Athos is demanding noting more than YouTube's compliance with its obligation

---

[2] "AIB __ " refers to Appellant's Initial Brief.

under the DMCA once it receives a takedown notice from Athos, which is to "expeditiously [] remove, or disable access to, the _material_ that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C)(emphasis added). The duty to check the information in the notice and takedown is inherent in the entire Section 512 regime. The system is voluntary for both service providers and copyright owners. "[A]ctual knowledge of infringing material, awareness of facts or circumstances that make infringing activity apparent, or receipt of a takedown notice will each trigger an obligation to expeditiously remove the infringing material." Viacom Intern., Inc. v. YouTube, Inc., 676 F.3d 19, 27–28 (2d Cir. 2012). It is axiomatic that the takedown notice provides facts regarding additional instances of infringement, and YouTube, which has total control over its own systems, is in the better position between the two parties to conduct a simple and automated search to ensure the URL provided is accurate and also to identify the other instances of the same content being hosted elsewhere on the service provider's systems. After all, the content uploaded is always fingerprinted and compared to other content before it is allowed to be displayed by YouTube.

Contrary to YouTube's arguments, and the district court's finding, Section 512(m) is not an impediment to removing the fingerprint matches of the material Athos identified in a takedown notice. Section 512(m) provides that "applicability

8

of subsections (a) through (d)", which includes the safe harbor, is not conditioned on "a service provider monitoring its service or affirmatively seeking facts indicating infringing activity[.]" 17. U.S.C. 512(m)(1). First, removing fingerprint matches of infringing material identified by Athos does not require YouTube to self-monitor infringement or remove the material on its own initiative. To the contrary, YouTube is responding to Athos' specific request for removal, submitted pursuant to the statute. Moreover, YouTube is a search engine and a content-delivery service designed to identify content – this is its core business. While it may be true that the DMCA does not impart an obligation on service providers to develop or deploy fingerprinting technology, YouTube developed it and deploys it on every single nanosecond  of content uploaded to its platform. YouTube is designed to identify content that is identical or nearly-identical to other content – this is how it ensures viewers continue watching similar videos by placing in auto-queue similar content. When particular material has been identified as infringing by the owner of its copyright, as Athos has done thousands of times through repeated proper takedown notices[3], YouTube has the obligation to remove that specific content and the matches of that material because it has gained knowledge that those fingerprint matches also likely infringe on Athos' copyrights. YouTube keeps those fingerprints and even the

---

[3] Athos has sent more than 3,452 requests for removal since May 2018; 3,389 of which have been for repeated works.

videos removed.[4] YouTube cannot continue selectively choosing which copyrighted content to protect. The statute does not protect YouTube's willful blindness to information its routine search mechanisms automatically discover. YouTube's failure to remove the fingerprint matches of infringing material until it receives another takedown request with a URL is not protected by the DMCA. Holding otherwise imposes burdens on copyright owners that imbalances the interests of copyright owners disproportionally in favor of YouTube and permits YouTube to ignore all information it already has included in a takedown request except for the URL. If a court were enforcing a trademark of counterfeit purses, would the court be satisfied if only one purse was removed from the shelves and the rest left for sale and infringement? If not, why would taking down one instance of the infringing material identified in Athos' takedown notice be sufficient instead of taking all the readily knowable instances?

YouTube chastises Athos' reliance on the Copyright Office Report to support its interpretation of the statute, which explains Section 512(m) and the statute's legislative history, as Athos' advocates here. USCO Report[5] at 113-114, 111, n. 591.

---

[4] Discovery here confirms YouTube keeps copies of videos that Athos requested be removed. YouTube produced about 3,302 clips to Athos. Content is only removed from public viewing, but YouTube keeps it. Doc 137-6 tr. 83:10-84:04.

[5] "USCO Report at __" refers to Unites States Copyright Office, Section 512 of Title 17, A Report of the Register of Copyrights, (May 2020), http://www.copyright.gov/policy/section512/section-512-full-report.pdf.

YouTube claims the "Copyright Office's report is not legal authority of any kind", "dubious and out of step with established case law". (YTB pp 37, 38, n.4) While the Copyright Office Report is not binding authority on this Court, neither are the cases it critiques, which are premised on decisions made more than a decade ago. See e.g., Viacom Int'l Inc. v. YouTube, Inc., 718 F. Supp. 2d 514 (S.D.N.Y. 2010), vacated in other grounds, 676 F.3d 19 (2d Cir. 2012) and UMG Recordings, Inc. v Shelter Cap. Partners LLC, 718 F.3d 1006, 1022 (9th Cir. 2013). Those cases established policy that, either in hindsight or at the time, is inconsistent with the studied, specialized expertise of the Copyright Office. Indeed, it is appropriate and necessary for this Court to make a *de novo* analysis of the statute to apply the law as intended by Congress contemplating todays' technological reality— not in the abstract but as implemented by YouTube's regular business practices, rather than rely on prior interpretations by other circuits.

Interpreting the DMCA as Athos does coincides with Congress' intent and its goal to "preserve[] strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment[.]" S.Rep. No. 105-190 at 40. Instead, YouTube's argument does exactly the opposite. YouTube asserts that the "Court should not open up a circuit split and undermine the settled expectations of numerous responsible online service providers like YouTube, who have designed and implemented robust

copyright systems in reliance on established law." (YTB p. 40). First, if the interpretation is wrong, as Athos correctly asserts, then simply going along to avoid a split is inconceivable. Second, nothing in ruling to remove known copyrighted material, already identified by YouTube, would affect its "implemented robust copyright systems" rather, it would simply force YouTube to use the "robust copyright systems" in the manner it should be implemented. Third, this argument simply deflects from the purpose of the copyright law at issue. YouTube wrongfully argues that Athos' interpretation switches the burden of policing infringement to place it on YouTube rather than on the copyright owner. The evidence here shows Athos is not advocating for that, and instead Athos has asked YouTube to remove all instances where YouTube knows Athos' copyrighted material appears on its website. YouTube's automatic processes compels this result, Athos is not asking YouTube to do something it does not already do. YouTube might have implemented "robust copyrights systems" but does not use them when the copyright owner asks YouTube to stop displaying its content without authorization. It only uses those systems when it is financially beneficial to YouTube. Responding to a takedown notice by removing all instances of the material identified as infringing by its owner is not the equivalent of requiring ongoing monitoring under §512(m) and YouTube's conflation of the two requirements illustrates the dissembling it uses to avoid any

responsibility to the millions of copyright creators on whose creative efforts it has earned billions without compensation.

As an excuse to support its failure to remove all instances of infringement, YouTube argues that Athos' interpretation deters innovation and harms legitimate expression (YTB p. 40) that would result in the removal of "broad swaths of content that users had every right to upload, including content that is licensed or a fair use" (YTB p. 41). But complying with the removal of material identified by Athos as infringing and all fingerprint matches of such material does not affect expression or innovation as YouTube claims or varies the way takedown requests are processed. Upon receiving a takedown request, YouTube is obligated to remove the content described in the request and it notifies the claimant if the uploader of the content objected to the removal. See Doc 137-6 tr. 172:25-174:02. If the uploader provides a counter-notice in response to the removal, then YouTube notifies the claimant of the counter-notification but allows the claimant and counterclaimant to debate who has paramount rights to display the content. See Doc 137-5 tr. 32:15-33:06, 34:15-20. YouTube does not participate in that discussion over who has superior rights to the content. Id. If instead of removing only the specific URL in the takedown request YouTube also removes the fingerprint matches of the material, the counter-notice procedure would be the exactly the same. YouTube is not involved in the counter-

13

notification process other than to provide notice of the removal to the uploader and notice of the counter-notice to the claimant.

Further, YouTube has no standing to argue that fingerprint matches of material that its copyright owner identified to be infringing content via a takedown notice might not be infringing. It is the copyright owner's prerogative to reach that conclusion. YouTube's allegation that it cannot remove fingerprint matches— namely, identical or near identical copies of the content in the takedown notice— premised on its conclusion that the identical copy is not necessarily infringing (YT Br. 42) contradicts YouTube's argument that it is the copyright owner who has the burden of identifying infringing material (see YTB pp 29, 34). When the copyright owner identifies material as infringing in a takedown request and YouTube removes the material in a URL, YouTube neither questions whether the copyright owner is correct nor verifies whether there is a license authorizing the content or if the video constitutes fair use. YouTube only confirms that the takedown notice includes the requirements of the statute for effective notification, which requires an attestation that the material is not authorized by the copyright owner (see 17 U.S.C. §512(c)(3)(A)(i)-(vi)), removes the URL, and notifies the uploader of the removal. If a counter-notification is received from the uploader, then the claimant is notified, and YouTube removes itself from the debate. The same process would take place if instead of removing only the material at the URL identified as infringing, YouTube

removes all fingerprint matches of that infringing material. The only thing that would likely change if YouTube complied with the DMCA and removed fingerprint matches of infringing content is the revenue it receives from displaying unauthorized content. Removing all existing infringing content as opposed to removing clip by clip, whenever a copyright owner identifies a specific URL, could "shut down the whole site." Doc 137-6 tr. 200:10-11. Of course, this is hyperbole but demonstrates the only reason why YouTube so adamantly refuses to remove fingerprint matches of infringing material identified by Athos.

YouTube's attempts to discredit Athos' notices by alleging a few takedown requests were the subject of license or fair use claims is a factual issue that is not before this Court or the proper subject of summary judgment. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1239 (11th Cir. 2010)("the fair use of copyrighted work is an affirmative defense"); Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises, 533 F.3d 1287, 1308 (11th Cir. 2008)("the existence of a license is an independent affirmative defense to a claim of copyright infringement"). The affirmative defenses of licenses and fair use are a trial issue solely mentioned by YouTube in this instant to place Athos in a bad light before this Court. The remote possibility that a material identified as infringing in a takedown notice and matching videos of that material is subject to a license or is fair use is secondary to the issue in this appeal.

**B. The evidence shows YouTube had knowledge that the clips-in-suit displayed infringing material and it was willfully blind to it.**

The evidence shows YouTube fingerprints every video uploaded to the platform, including videos of Athos' copyrighted works. Doc 137-6 tr. 102:25-103:10. Prior to receiving Athos' takedown request, the content described in the notice had been fingerprinted and automatically compared to other content on the platform. Doc 137-6 tr. 97:10- 99:13, 103:03-10. Upon processing Athos' takedown request the fingerprints are automatically processed to ensure similar infringing material is flagged. Id. YouTube can instruct the software to block identical content uploaded in the future, and to remove pre-existing content when the takedown request is received. Doc 137-6 tr. 100:17-21, 148:09-156:20; see also Doc 137-6 tr. 200:1-12 (acknowledging the software can remove past, present, and future copies of content displaying infringing material, but it is not done because it could "shut down the whole site.")

YouTube's argument that there is no evidence showing Content ID even attempted to find matches of the material identified in takedown notices belies the fact that ever single video uploaded into YouTube is fingerprinted and scanned and that Athos had to send repeated takedown notices to have material removed. Had YouTube removed fingerprint matches of the material identified in the notice, whether they were already in the system or uploaded after the takedown notice was received, that overlapping content would not have been displayed and Athos'

copyrights respected and given more protection. YouTube's attempt to distinguish a work-in-suit with a clip-in-suit is immaterial because the takedown notice properly identified the infringing *material*, as required under the statute (17 U.S.C. §512(c)(1)), and that was sufficient to allow YouTube to identify and remove fingerprint matches of that *material* with the fingerprinting technology its uses on every video and as matter of business policy. "'[T]he weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Edmondson v. Velvet Lifestyles, LLC, 43 F.4th 1153, 1160 (11th Cir. 2022) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, it was error for the district court to grant summary judgment. The fingerprint matches of material identified by Athos as infringing gave YouTube actual or at a minimum red-flag knowledge that those matches also infringed on Athos' copyrights. Its voluntary decision to continue displaying the material amounts to willful blindness to that infringing activity and violates the DMCA.

"Willful blindness to specific infringement is a proxy for knowledge that would negate the safe harbor defense." Atlantic Recording Corp. v Spinrilla, LLC, 506 F.Supp. 3d 1294, 1317 (S.D. Fla. 2020). The evidence clearly supports YouTube turned a blind eye to the additional infringing material. YouTube fingerprinted the

video and instantly compared the fingerprints to other content in the platform. Doc 137-6 tr. 102:25-103:10. When Athos discovered its movies were illegally displayed on YouTube, it sent takedown requests to remove the infringing clips. Doc 100-2; Doc 137-1 tr. 030:16-17, 041:22-23 ("YouTube [has] been sent 10,000 notices"). Upon receipt of the takedown notice, YouTube identified the content described in the notice and additional matching content. See Doc 137-6 tr. 102:25-103:10, 118:17-120:09, 132:8-134:21. Instead of removing the clips of which it had both actual (in the notice) and red flag knowledge of (matching), YouTube chose to remove only the URL of the clip of which it had actual knowledge. See Doc 137-6 tr. 191:11-12, 197:08-200:12. Therefore, YouTube did not expeditiously remove clips of which it gained constructive knowledge of by virtue of its automatic fingerprinting system and the takedown requests. If YouTube removed the URL in the notice because it knew the material infringed on the owners' copyright, then— obviously, identical matches to that material are also infringing. YouTube's actions meet the elements of willful blindness. Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011) ("a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts").

**C. YouTube financially benefits from material infringing on Athos' copyrights and has the right and ability to control that infringing activity.**

As set forth in the Initial Brief, Athos does not argue that a provider loses immunity under Section 512(c)(1)(B) if the internet service provider can block infringing material. (AIB pp. 43-44, 48) Indeed, Athos states that the Ninth Circuit in <u>UMG Recordings, Inc.</u>, was correct when it held that the "ability to remove materials posted by third parties does not satisfy the 'right and ability to control' prong, because such power is necessary for a service provider to satisfy the basic requirement of 'takedown' under the DMCA." <u>Id.</u> quoting <u>UMG Recordings, Inc.</u>, 718 F.3d at 1027. However, the legislative history reflects that the courts applied the law incorrectly and contrary to Congress intent in enacting the DMCA which only "limits the liability of qualifying service providers for claims of direct, vicarious and contributory infringement" (S.Rep. No. 105-190, at 15, 34) because the holdings eliminated elements existing under the common law. Therefore, this Court should conduct a *de novo* review of the law considering the status of the common law when the DMCA was enacted. <u>See</u> <u>Fonovisa, Inc. v. Cherry Auction, Inc.</u>, 76 F.3d 259, 262 (9th Cir. 1996). Applying the elements of liability at common law, the DMCA still allows immunity to a service provider who expeditiously removes the infringing content despite receiving a direct financial benefit from infringing activity and having a right and ability to control such infringing activity, therefore meeting the

elements for vicarious liability[6]. <u>See</u> 17 U.S.C. §512(c)(1)(C). Vicarious liability claims are not excluded from the safe harbor in Section 512(c); the claim is codified and includes an additional element to exclude liability.

YouTube's advertisements through videos infringing on Athos' works, use of algorithms to promote particular videos, offers of videos to viewers through auto-play function that puts the next – likely infringing –video into the viewer's queue, intentional choice to not use its digital fingerprinting technology to remove video content identical to that for which it has received takedown notices, and monetization of the content provided by third parties amounts to financial benefit directly attributable to the infringement of Athos' works and shows it has the right and ability to control that infringing activity. <u>See</u> Doc 137-3 tr. 15:1-6, 17:12-25, 79:24-87:25, 119:18-24, 120:24-121:4; Doc 137-6 tr. 102:25-103:10, 118:17-120:09, 132:8-134:21, 191:11-12; Doc 137-7 tr. 53:08-57:20.

Furthermore, YouTube also monetizes the infringing content not only through direct advertisement but also other forms of monetization (Doc 137-3 tr. 87:01-91:20), as YouTube only considers advertising revenue accumulated from ads

---

[6] <u>See</u> <u>Fonovisa, Inc.</u>, 76 F.3d at 262 (""even in the absence of an employer-employee relationship one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'"); <u>see also</u> <u>Disney Enterprises, Inc.</u>,  No. 11-20427-CIV, 2013 WL 6336283, at *38 ("vicarious infringement has two elements, occurring 'when one profits from direct infringement while declining to exercise a right to stop or limit it.' ")

running against a video ID over a specified time period in U.S. Dollars (Doc 137-3 tr. 96:17-20). The calculation does not account for other forms of revenue generated from the same clip. Doc 137-3 tr. 98:01-25. The material infringing on Athos' copyrights has generated more than 8 million views. Views create money for YouTube. Applying a common-sense, fact-based approach to these details, as Congress intended (see S.Rep. No. 105-190, at 35) shows the financial benefit criterion is satisfied, YouTube has the right and ability to control the infringing content, supports it, encourages it for its financial gain and materially contributes to it. YouTube is thus disqualified from the safe harbor because it did not expeditiously remove fingerprint matches of content and refused to remove it unless it received a URL from the owner, and the district court erred in granting summary judgment against Athos.

## CONCLUSION

Athos respectfully requests this Court to reverse the Final Judgment and Order affirming and adopting the Amended Report and Recommendation that granted summary judgment against Athos and remands the case to proceed to a trial by jury.


Date: March 7, 2024.                    Respectfully submitted,

                                         /s/ Omar Ortega
                                        Omar Ortega, Esq.
                                        Florida Bar No.095117
                                        Rey Dorta, Esq.
                                        Florida Bar No. 0084920
                                        Rosdaisy Rodriguez, Esq.
                                        Florida Bar No. 0112710
                                        3860 SW 8th Street, PH
                                        Coral Gables, Florida 33134
                                        Phone: (305)461-5454
                                        Facsimile: (305)461-5226
                                        Email: oortega@dortaandortega.com
                                        Email: rdorta@dortaandortega.com
                                        Email: rrodriguez@dortaandortega.com

                                        *Attorneys for Appellant.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,062 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point font Times New Roman.

<u>/s/ Omar Ortega</u>
Omar Ortega, Esq.
Attorney for Appellant

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2024, I electronically filed the foregoing with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system which will send a notice of electronic filing to appellees' counsel of record who are registered CM/ECF users.

/s/ Omar Ortega
Omar Ortega, Esq.
Attorney for Appellant
